**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 19-23746-CV-ALTONAGA**
**(18-20139-CR-ALTONAGA)**
**MAGISTRATE JUDGE REID**

FRANTZ SILVENE,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.
_____/

## <u>REPORT OF MAGISTRATE JUDGE</u>

Movant has filed a motion to vacate under 28 U.S.C. § 2255. The undersigned has reviewed all pertinent portions of the records in both this and the underlying criminal case. Furthermore, the undersigned has conducted an evidentiary on movant's first claim. As discussed below, movant's motion should be DENIED.

### I.    Procedural Background

A.   <u>Underlying Criminal Case</u>

On March 1, 2018, a grand jury charged movant with: (1) conspiracy to defraud the government with respect to claims; (2) possession of fifteen or more unauthorized access devices; and (3) aggravated identity theft. [Cr-ECF No. 1].

Pursuant to a written plea agreement, movant pleaded guilty to one count of conspiracy to defraud the government with respect to claims (count one) and one count of aggravated identity theft (count six). [Cr-ECF No. 41 at 1]. The plea agreement contained a broad appeal waiver. [*Id.* at 4-5].

Furthermore, the plea agreement stated that the parties would make a joint recommendation that the total offense level would be twenty-three. [*Id.* at 3-4]. This total included an 18-level increase under U.S.S.G. § 2B1.1(b) based on "actual, probable, or intended loss . . . between $3,500,000 and $9,500,000." [*Id.* at 4]. Additionally, the government agreed to recommend a sentence "at the low end of the advisory guideline range." [*Id.* at 3].

According to the factual proffer, between January 2010 and October 2013, movant and his codefendant "agreed on a scheme . . . to file fraudulent tax returns . . . using stolen personal identity information." [Cr-ECF No. 42 at 1]. Movant and his conspirators "caused the filing of approximately 1,000 tax returns seeking approximately $6.8 million in fraudulent tax refund claims from the stolen personal identity information." [*Id.* at 1-2]. "[T]he IRS paid out approximately $1.5 million in refunds to the accounts controlled by [movant and others]." [*Id.* at 2].

Furthermore, "[i]n or around October 2016, [movant] knowingly possessed personal identity information, including more than 15 social security numbers, without lawful authority and with intent to file fraudulent tax refund claims." [*Id.*]

One of the persons whose personal identity information movant possessed "advised that he/she did not know [movant] or authorize [him] to possess [such] information." [*Id.* at 3].

At movant's change-of-plea hearing, movant stated that he understood his right to appeal and was waiving it. [Cr-ECF 63 at 10]. Movant also acknowledged the truth of the factual proffer. [*Id.* at 13-14].

Movant's guideline imprisonment range was fifty-seven to seventy-one months on count one, plus a mandatory consecutive two-year term for aggravated identity theft. [Cr-ECF No. 64 at 3-4]. At sentencing, the government recommended a sentence of fifty-seven months on count one, for a total term of eighty-one months. [*Id.* at 4-5]. Defense counsel asked for a total sentence of sixty-nine months. [*Id.* at 5]. The court imposed a sentence of sixty-three months on count one and twenty-four months on count two, for a total term of eighty-seven months. [*Id.* at 10]. The court informed movant that he had a right to appeal his sentence. [*Id.* at 12].

The court entered judgment on August 28, 2018. [Cr-ECF No. 55]. Movant did not appeal.

B.    This § 2255 Case

1.    *Pre-Evidentiary Hearing Proceedings*

On September 5, 2019, movant timely filed his § 2255 motion. [Cv-ECF No. 1]. Claim one alleges that movant told trial counsel that he "wanted to challenge the

sentence." [*Id.* at 4]. This was because the "statute of limitation[s] had passed and the intended loss was wrong." [*Id.*] His attorney "visit[ed] him in [prison], but the consultation lasted less than 5 minutes." [*Id.*] His attorney told him "there is nothing that can be done, but I am sure you will file a § 2255 against me." [*Id.*] His attorney "then ended the consultation and . . had no other contact with [movant]." [*Id.*]

Movant's second claim faults counsel for not objecting to the court's failure to "determine when the conspiracy commenced, [or] make a jointly undertaken activity analysis or foreseeability of co-conspirator misconduct finding." [*Id.* at 5]. Had counsel done so, the court "would have recognized [that] it was [] impossible for the conspiracy to have begun prior to 2011 and that [the] jointly undertaken activity did not occur until 2012." [*Id.*] "Plus, there is a reasonable likelihood that unforeseeable co-conspirator conduct would reduce the intended loss even further." [*Id.*] Counsel's failure to raise this objection "resulted in a higher sentence for [movant]." [*Id.*]

Movant's third claim subsumes two subclaims. First, he alleges that counsel ineffectively failed to file a motion to suppress based on the "warrantless search of [movant's] residence." [*Id.* at 7]. In support, movant contends that, while he was in the process of moving, his landlord entered his apartment and called the police about "a computer and some papers." [*Id.*] "By the time [the] police arrived, [movant] had returned to the property." [*Id.*] "Nonetheless, the police entered without his consent

and seized the property." [*Id.*] The property does "not contain on [its] face any evidence of criminal activity." [*Id.*]

Second, movant alleges that the "government charged [movant] with conduct that occurred outside the statute of limitations. . . . by extending the conspiracy back to 2010." [*Id.*] However, movant contends that: (1) it was "impossible for the conspiracy to have commenced prior to late 2011" because he "did not have any contact with the alleged conspirator until 2011"; and (2) "no agreement on a common criminal objective can be inferred from the evidence until some time at the end of 2012." [*Id.*]

Movant adds that he would not have pleaded guilty had counsel not "overlooked [the] meritorious statute of limitation[s] defense and a valid suppression issue." [*Id.*]

The undersigned issued an order for supplemental declaration and documents on the ground that claim one was deficiently pleaded. [Cv-ECF No. 5].

In response, movant filed a declaration stating that he told his attorney before he left his sentencing hearing that he wanted to appeal his sentence because of the statute-of-limitations and loss-amount issues. [Cv-ECF No. 6 at 1]. "A few days later," his attorney visited him at prison. [*Id.* at 2]. Although he told her "to challenge both the conviction and sentence," she said "there is nothing to appeal" and "I am

sure you will file a § 2255 against me." [*Id.*] Further, he contends that his attorney failed to "explain to [him] the benefits and detriments of appealing." [*Id.*]

The government filed a response to movant's § 2255 motion. [Cv-ECF No. 8]. Movant filed a reply that adds nothing of substance to his motion. [Cv-ECF No. 9].

The court appointed Nathan D. Clark as counsel and scheduled an evidentiary hearing on only claim one. [Cv-ECF No. 10].

### 2.    *Evidentiary Hearing*

The undersigned held on evidentiary hearing on February 18, 2020. [Cv-ECF No. 22]. Mr. Clark called movant. Michael N. Berger, Assistant United States Attorney, called movant's defense counsel, Julie Holt, Assistant Federal Public Defender.

### a.    **Movant's Relevant Testimony**

Movant told Ms. Holt that he wanted to appeal on the same day he was sentenced. She said she would come to see him at his prison. She came "a couple weeks later." Movant's inconsistent statement in his supplemental declaration that his attorney visited him "a few days" after the sentencing hearing was "maybe . . . a typo."

The consultation at the prion lasted fewer than ten minutes. Ms. Holt told movant that there was "nothing she could do," "there was nothing to appeal," and

that she "guess[ed he was] going to file a 2255 against [her]." Ms. Holt did not otherwise discuss the prospects of appealing with movant. Ms. Holt would not listen to movant.

In late March 2019, seven months after his late August 2018 sentencing, movant wrote Ms. Holt a letter asking for case-related documents. *See* [Cv-ECF No. 24-5]. Movant was trying to figure out if he could file an appeal on his own. However, movant did not mention Ms. Holt's failure to file an appeal in the letter.

### b.   Ms. Holt's Relevant Testimony

When she started representing movant, Ms. Holt had approximately seven years of criminal defense experience, including two years as a federal defender. Movant was upset after sentencing because the district court did not grant a downward departure.

Ms. Holt saw him at the prison "about a week" after sentencing to consult with him about a potential appeal, as is her standard practice. At the meeting, she told movant that he could appeal. Further, she discussed any issues for appeal and the time frame for appealing. However, Ms. Holt did not see any appealable issues. Movant told Ms. Holt that he did not want to appeal. Ms. Holt was not upset with movant and movant did not seem upset with her.

Had movant told Ms. Holt that he wanted to appeal, she would have filed an appeal. She had done so before even if she saw no meritorious issue for appeal.

### c.    Credibility Determination

Credibility determinations of witness testimony in a § 2255 proceeding are generally made by "weigh[ing] the testimony of all of the witnesses, taking into account relevant factors such as their interests in the case, the consistency or inconsistency of their testimony, and their demeanor on the stand[.]" *See Rizo v. United States*, 662 F. App'x 901, 912 (11th Cir. 2016) (per curiam) (citing *United States v. Ramirez-Chilel*, 289 F.3d 744, 750 (11th Cir. 2002)); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) (stating that demeanor, vocal inflection, the consistency or inconsistency of testimony, and the internal plausibility or implausibility of testimony are relevant considerations when determining witness credibility).

Here, the undersigned found movant's testimony incredible. As noted, movant could not sensibly explain the inconsistency between his testimony that Ms. Holt saw him a couple of weeks after sentencing and his sworn statement that she saw him a few days after sentencing. This unexplained inconsistency damaged movant's credibility.

That movant did not mention an appeal in his March 2019 letter to Ms. Holt also damaged his credibility. If movant truly had told Ms. Holt that he wanted her to appeal, it is likely that he would have mentioned her failure to do so in the letter. It is also likely that he would not have waited seven months to contact her.

Further damaging movant's credibility were his vague description of his post-sentencing consultation with Ms. Holt and unsteady demeanor as a witness.

In sum, the inconsistency, vagueness, and implausibility of movant's testimony, coupled with his unsteady demeanor, left the undersigned with the impression that he manufactured key aspects his testimony to support claim one.

By contrast, the undersigned found Ms. Holt's testimony credible. As the subsequent analysis will show, the record supports Ms. Holt's testimony that movant did not have any appealable issues. Furthermore, her experience, professional practices, and coherent testimony support the credibility of her account of the post-conviction consultation.

In sum, Ms. Holt was a credible witness. The undersigned finds credible all relevant aspects of her testimony, including her testimony that movant told her that he did not want to appeal.

## II.    Legal Analysis

A.    <u>Claim One</u>

"An attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). "At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that,

by following his instructions, his counsel performed deficiently." *Flores-Ortega*, 528 U.S. at 477 (citation omitted).

Here, upon consultation, movant told Ms. Holt that he did not want to appeal. Ms. Holt's decision to follow his instructions was not unreasonable.

Furthermore, this claim would fail even had movant not told Ms. Holt that he did not want to appeal. Again, his testimony that he told her that he wanted to appeal is not credible. Therefore, the issue would be whether Ms. Holt "consulted with [him] about an appeal" within the meaning of *Flores-Ortega*. 528 U.S. at 478. In this context, consult means means "[]advising [movant] about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover [his] wishes." *Id.*

Here, Ms. Holt's credible testimony shows that she consulted with movant about an appeal. Ms. Holt saw him at the prison about a week after sentencing to discuss a potential appeal. She told movant that he could appeal. Further, she discussed any issues for appeal and the time frame for appealing. Ms. Holt did not see any appealable issues and, as the subsequent analysis shows, the record supports this testimony.

For these reasons, claim one lacks merit.

B.   Claim Two

Claim two is not fully clear. Movant appears to allege that he is not responsible for all the acts of his coconspirators because: (1) not all the acts were jointly undertaken; and/or (2) not all the acts were reasonably foreseeable. Movant further alleges that, had counsel objected on this ground, the loss amount would have been lower.

This claim is factually unsupported, conclusory, and contradicted by the record. The factual proffer states that, between January 2010 and October 2013, movant and his codefendant "agreed on a scheme . . . to file fraudulent tax returns . . . using stolen personal identity information." [Cr-ECF No. 42 at 1]. Further, the proffer states that movant and his conspirators "*caused* the filing of approximately 1,000 tax returns seeking approximately $6.8 million in fraudulent tax refund claims from the stolen personal identity information." [*Id.* at 1-2 (emphasis added)]. The proffer adds that movant and his codefendant "received and used money from these false refund claims for their [] personal benefit." [*Id.* at 2].

Thus, the record supports a finding that, for the entire period from January to October 2013, movant was involved in a joint scheme and could have reasonably foreseen his codefendant's fraudulent acts in furtherance of the conspiracy. *See generally United States v. Presendieu*, 880 F.3d 1228, 1245 (11th Cir. 2018) ("[I]n the case of a jointly undertaken criminal activity, a defendant is responsible for 'all

acts and omissions of others that were--(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity.'" (emphasis omitted) (quoting U.S.S.G. § 1B1.3(a)(1)(B))).

Furthermore, subject to exclusions irrelevant here, "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A). Here, the factual proffer states that movant caused the filing of fraudulent tax returns seeking $6.8 million in claims. Therefore, because the record showed that movant intended a loss of $6.8 million, counsel had no ground to object to the 18-level enhancement under U.S.S.G. § 2B1.1(b)(1)(J). *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim." (citation omitted)).

In sum, claim two lacks merit.

C.     Claim Three

1.     *Subclaim One*

Movant contends that counsel ineffectively failed to move to suppress based on the warrantless search of his alleged residence. This claim lacks merit.

Movant pleaded guilty to aggravated identity theft. In support, the factual proffer states that, "[i]n or around October 2016, [movant] knowingly possessed personal identity information, including more than 15 social security numbers,

without lawful authority and with intent to file fraudulent tax refund claims." [Cr-ECF No. 42 at 2]. One of the persons whose personal identity information movant possessed "advised that he/she did not know [movant] or authorize [him] to possess [such] information." [*Id.* at 3].

The affidavit supporting the government's search warrant states that, on October 31, 2016, the lease to the apartment where the contraband was found expired. [Cv-ECF No. 8-3 at 5]. Movant was not one of the lessors. [*Id.*] On November 3, 2016, the property manager entered the apartment and observed, *inter alia*, "several hand-written ledgers with hundreds of people's personal identity information." [*Id.*] The property manager considered the items suspicious and contacted the police. [*Id.*] That day, the police arrived and seized the contraband. [*Id.* at 5-6].

The police saw movant leave the area on that day. [*Id.* at 6]. Movant had previously asked the property manager for the contraband. [*Id.*] However, the property managed told him that only a tenant could remove items left behind. [*Id.*]

Here, the record does not reflect that there was any ground for counsel to move to suppress. The facts stated in the affidavit indicate that movant did not have standing to challenge the search. "To have standing, a defendant bears the burden of showing a legitimate expectation of privacy in the area searched, although the government has the burden of showing 'abandonment' of the premises. *United States*

*v. Brazel*, 102 F.3d 1120, 1147-48 (11th Cir. 1997) (quoting *United States v. Ramos*, 12 F.3d 1019, 1023 (11th Cir. 1994)).

On these facts, counsel reasonably could have concluded that movant never had a reasonable expectation of privacy in the apartment. Nothing in the record indicates that movant's name was on the lease or that he paid rent at the apartment. *See id.* Movant's assertion that he was a tenant at the apartment is unsupported and conclusory. Indeed, movant has not responded to the affidavit's factual assertion that the property manager refused movant entry to the apartment because he was not a tenant.

Furthermore, even if movant had a reasonable expectation of privacy in the apartment at some point, counsel reasonably could have concluded that he abandoned it, or that the officers had an objectively reasonable belief that it was vacant. Again, movant's name was not on the lease, which had expired before the property manager entered the apartment. *See id.* at 1148-49. Movant apparently alleges that he was present and objected to the search. *See* [Cv-ECF No. 1 at 7]. However, this conclusory allegation is contradicted by the affidavit, which merely states that officers saw him in the area of the apartment when the officers searched it.

Finally, movant's assertion that the seized items did not contain incriminating information on their face is frivolous. Again, the affidavit states that the property

manager observed ledgers with hundreds of people's personal identity information, including social security numbers. The factual proffer states the same. It also states that one of the affected persons told the police that (s)he did not know movant or authorize him to possess the information.

In sum, counsel reasonably could have concluded that movant did not have a reasonable expectation of privacy in the apartment or its contraband and/or that movant abandoned any such expectation.

For the same reasons, counsel could have reasonably concluded that the private-search doctrine barred any Fourth Amendment challenge to the officers' seizure of the contraband. *See generally United States v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015) ("[O]nce an individual's expectation of privacy in particular information has been frustrated by a private individual, the Fourth Amendment does not prohibit law enforcement's subsequent use of that information, even if obtained without a warrant." (citation omitted)).

Accordingly, counsel did not deficiently fail to move to suppress. The district court almost certainly would have denied the motion. *See Freeman*, 536 F.3d at 1233.

2.     *Subclaim Two*

Subclaim two lacks merit. Movant contends that the government charged him with conduct that occurred outside the statute of limitations "by extending the conspiracy back to 2010."

The factual proffer states that the conspiracy lasted from January 2010 to October 2013. Movant was indicted on March 1, 2018. Because a five-year statute of limitations applied to movant's conviction for conspiracy to defraud the government with respect to claims, *see* 18 U.S.C. § 3282(a), there was no valid statute of limitations defense.

Furthermore, movant alleges that some of his criminal conduct occurred outside the 5-year window and that this conduct was improperly used to calculate his sentence. However, "the district court may consider criminal conduct that occurred outside of the statute of limitations period as relevant conduct for sentencing purposes." *United States v. Behr*, 93 F.3d 764, 765-66 (11th Cir. 1996) (per curiam) (citing cases); *see also United States v. Hamaker*, 455 F.3d 1316, 1336 (11th Cir. 2006) (district courts may "consider not merely the charged conduct, but rather all relevant conduct, in calculating a defendant's offense level" (citations and internal quotation marks omitted)).

In sum, this subclaim fails.

### III.   Evidentiary Hearing

Movant is not entitled to an evidentiary hearing on claims two and three. "[T]he motion and the files and records of the case conclusively show that [movant] is entitled to no relief[.]" *See* 28 U.S.C. § 2255(b). In short, the preceding discussion conclusively shows that movant's claims are "patently frivolous" and "affirmatively contradicted by the record." *See Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989).

### IV.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.* "If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." *Id.* "A timely notice of appeal must be filed even if the district court issues a certificate of appealability." Rule 11(b), Rules Governing § 2255 Proceedings.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a § 2255 movant's constitutional claims on the merits, he "must show that reasonable jurists could debate whether . . . the [motion] should

have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation omitted).

Here, the undersigned denies a certificate of appealability. If movant disagrees, he may so argue in any objections filed with the district court.

## V.     Recommendations

Based on the foregoing, it is recommended that movant's motion to vacate [Cv-ECF No. 1] be DENIED; that no certificate of appealability issue; that final judgment be entered; and that this case be closed.

Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar movant from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985).

DONE AND ORDERED at Miami, Florida, this 16th day of September, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:    Nathan Dorlon Clark
       Nathan Clark
       17641 S. Dixie Highway
       Palmetto Bay, FL 33157

305-255-7500
Fax: 305-255-7040
Email: nclark@coralreeflaw.com

Michael N. Berger
US Attorney's Office
99 NE 4th Street
Miami, FL 33132
305-961-9445
Fax: 305-536-4699
Email: michael.berger2@usdoj.gov

Noticing 2255 US Attorney
Email: usafls-2255@usdoj.gov